## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

Lance Studdard, in his capacity as the trustee of the Southern Imperial, Inc. Employee Stock Ownership Plan, and Southern Imperial, Inc.,

Plaintiffs,

v.

Rally Capital Services, LLC, Howard Samuels, and Dan Lee,

Defendants.

**Case No.**

**JURY TRIAL DEMANDED**

For their Complaint against Defendants Rally Capital Services, LLC ("Rally Capital"), Howard Samuels ("Samuels"), and Dan Lee ("Lee" and, with Rally Capital and Samuels, "Defendants"), Plaintiffs Lance Studdard, in his capacity as the trustee of the Southern Imperial, Inc. Employee Stock Ownership Plan ("Studdard") and Southern Imperial, Inc. ("Southern Imperial" and, with Studdard, "Plaintiffs") allege as follows:

### Parties

1.      Plaintiff Lance Studdard is the trustee of the Southern Imperial, Inc. Employee Stock Ownership Plan ("ESOP"), a retirement plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA). The ESOP is the sole shareholder of Southern Imperial.

2.      Plaintiff Southern Imperial, Inc. is an Illinois corporation with a principal place of business in Rockford, Illinois.

3.      On information and belief, Defendant Rally Capital Services, LLC is an Illinois limited liability company with a principal place of business in Chicago, Illinois. On information

and belief, at least one member of Rally Capital is a resident of Illinois, and therefore Rally Capital is a resident of Illinois.

4. On information and belief, Defendant Howard Samuels is an individual resident of the state of Illinois and is the president and founder of Rally Capital. Samuels previously served on the board of directors of Southern Imperial.

5. On information and belief, Defendant Dan Lee is an individual resident of the state of Illinois and is a principal and employee of Rally Capital. Lee previously served on the board of directors of Southern Imperial.

**Jurisdiction and Venue**

6. This Court has personal jurisdiction over Defendants because each is a resident of the state of Illinois. This Court further has personal jurisdiction over Samuels and Lee because they were members of the board of directors of an Illinois corporation and the allegations in this Complaint arise out of their service on the board of directors of that Illinois corporation.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) because Plaintiffs seek relief for Samuels' and Lee's breaches of their ERISA fiduciary duties. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the Defendants reside in this judicial district and a substantial part of the events giving rise to this Complaint occurred in this judicial district. Venue is further proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) because the ESOP is an ERISA governed plan administered in this judicial district.

**Southern Imperial Engages Rally Capital
to Assist in Winding Down Southern Imperial**

9.      On or about August 3, 2017, all of Southern Imperial's assets were sold to Fasteners Retail, Inc. (the "Asset Sale"). As a result, Southern Imperial needed to wind down both the company and its ESOP.

10.     To facilitate the wind-down process, on or about July 17, 2017, Southern Imperial's board of directors engaged Rally Capital to serve as a consultant and advisor per the terms of an engagement letter (the "Engagement Letter").

11.     Rally Capital provided services to Southern Imperial from July 2017 until September 2020 (the "Wind-Down Period").

12.     Pursuant to the Engagement Letter, Rally Capital estimated the range of fees for its services during the Wind-Down Period to be from $100,000 to $175,000 (the "Engagement Estimate").

13.     At some point after July 19, 2017, the members of Southern Imperial's board of directors stepped down and appointed Samuels and Lee, as well as now-deceased Timothy P. Selke ("Selke"), to the Southern Imperial board of directors.

14.     Samuels, Lee, and Selke were all principals and employees of Rally Capital and benefitted personally from the engagement between Southern Imperial and Rally Capital.

15.     With the understanding that Southern Imperial's engagement with Rally Capital had been approved by the previously independent board of directors, and after conducting diligence regarding the qualifications of the new board members, including their experience with winding down companies and ERISA plans, Studdard approved the appointment of Samuels, Lee, and Selke to the Southern Imperial board of directors on or about August 3, 2017.

16.     Rally, Samuels, Lee, and Selke were under the duty to comply with their duties under Illinois law and ERISA and act solely in the best interests of Southern Imperial and the ESOP participants.

**Samuels, Lee, and Selke Breach their Fiduciary Obligations by Paying Themselves an Unreasonable Fee for Work Performed by Rally Capital**

17.     Rather than acting solely in the best interests of Southern Imperial and the ESOP participants, Samuels, Lee, and Selke instead acted in their own best interests and the interests of their company, Rally Capital.

18.     For example, the amount of fees charged by Rally Capital for the services provided during the Wind-Down Period far exceeded the Engagement Estimate.

19.     Rather than falling between the $100,000 and $175,000 range represented by Rally Capital in the Engagement Letter, Rally Capital charged something in excess of ten times the Engagement Estimate without amending the fee schedule or providing Plaintiffs notice that it had exceeded the Engagement Estimate.

20.     The amounts charged by Rally Capital for the services provided was unreasonable, and, on information and belief, many services provided by Rally Capital were unnecessary.

21.     For example, Selke alone billed an unreasonable amount of time to Southern Imperial given the scope of the wind-down services Rally Capital was to provide to Southern Imperial. Specifically, Selke billed 782.60 hours to Southern Imperial in 2017, 1,684.05 hours to Southern Imperial in 2018, and 1,834.85 hours to Southern Imperial in 2019. In total, Selke alone billed 4,301.95 to Southern Imperial from July 2017 until his death in December 2019.

22.     Despite the unreasonableness of the fees charged by Rally Capital, Samuels, Lee, and Selke authorized Southern Imperial to pay all invoices, including those in excess of the Engagement Estimate.

23. Although Studdard discussed the services to be provided by Rally Capital with Samuels, Lee, and Selke, Studdard never received any invoices for these services, did not have access to any Southern Imperial bank accounts from which these invoices were paid, was not informed that Samuels, Lee, and Selke authorized payment to Rally Capital in an amount ten times the Engagement Estimate, never amended the fee schedule, and never provided notice of exceeding the Engagement Estimate.

**Rally Capital Fails to Comply with the Post-Closing Agreement
Between Studdard and Rally Capital**

24. On or about August 3, 2017, Studdard, in his capacity as trustee of the ESOP and Rally Capital, as Seller Representative, entered into a Post-Closing Agreement ("Post-Closing Agreement") that required Rally Capital to pay amounts owed by the Southern Imperial to third parties as of the closing of the Asset Sale ("Closing Obligations") from a Post-Closing Reserve established by the Southern Imperial upon the closing of the Asset Sale.

25. Despite its obligations under the Post-Closing Agreement to pay the Closing Obligations, Rally Capital failed to pay certain Southern Imperial debts, including but not limited to taxes due to the State of Texas, as well as over-paid itself and others.

**Count I – Breach of ERISA Fiduciary Duties
(Samuels and Lee)**

26. Plaintiffs incorporate by reference each of the foregoing allegations as if fully restated here.

27. As the trustee representing the participants of the ESOP, Studdard is an ERISA fiduciary as defined by Section 3 of ERISA, 29 U.S.C. § 1002(21)(A).

28. Southern Imperial is also an ERISA fiduciary as defined by Section 3 of ERISA, 29 U.S.C. § 1002(21)(A).

29.     As members of the Southern Imperial board of directors charged with winding-down Southern Imperial and distributing its assets, Samuels and Lee exercised discretion to administer, control, and manage the ESOP and its assets because the ESOP was the sole shareholder of Southern Imperial. Samuels and Lee were therefore also fiduciaries as defined by Section 3 of ERISA, 29 U.S.C. § 1002(21)(A).

30.     Pursuant to Section 404 of ERISA, 29 U.S.C. § 1104, Samuels and Lee were required to discharge their duties solely in the interests of the ESOP participants and for the exclusive purpose of providing benefits to the ESOP participants with the care, skill, prudence and diligence that a prudent man acting in a like capacity and familiar with such matters would use for the conduct of an enterprise of like character with like aims.

31.     Samuels and Lee breached these duties under ERISA by engaging in a self-interested, prohibited transaction under Section 406 of ERISA, 29 U.S.C. § 1106, including by authorizing the ESOP to use plan assets to pay themselves and their company, Rally Capital, an unreasonable fee for services provided to the ESOP.

32.     Further, Samuels and Lee continued to authorize payment to Rally Capital from ESOP plan assets far in excess of the Engagement Estimate for services provided during the Wind-Down Period that, on information and belief, they knew were unreasonable and unnecessary in order to further their own interests rather than the interests of the participants of the ESOP.

33.     The ESOP and its participants are therefore entitled to the imposition of an equitable lien on, and constructive trust over, the ESOP plan assets obtained by Samuels and Lee as a result of the breaches of their fiduciary duties and to recoup from Samuels and Lee the amounts they received as a result of those breaches.

34.     Pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), Plaintiffs are also entitled to their reasonable attorneys' fees and costs.

### Count II – Equitable Lien and Constructive Trust
### (Rally Capital)

35.     Plaintiffs incorporate by reference each of the foregoing allegations as if fully restated here.

36.     On information and belief, Rally Capital is in possession of funds obtained as a result of Samuels' and Lee's breaches of their ERISA fiduciary duties.

37.     Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), Plaintiffs are entitled to an equitable lien on and constructive trust over, and to recoup from Rally Capital, the ESOP plan assets obtained by Rally Capital as a result of Samuels' and Lees' breaches of their ERISA fiduciary duties.

38.     Pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), Plaintiffs are also entitled to their reasonable attorneys' fees and costs.

### Count III – Breach of Duty of Loyalty
### (Samuels and Lee)

39.     Plaintiffs incorporate by reference each of the foregoing allegations as if fully restated here.

40.     As members of the Southern Imperial board of directors, Samuels and Lee each owed a duty of loyalty to Southern Imperial that required Samuels and Lee to act in the best interest of Southern Imperial, as well as to act in good faith in any matter relating to Southern Imperial.

41.     Samuels and Lee breached their duty of loyalty to Southern Imperial by advancing their own interests and the interests of their company, Rally Capital, to the detriment of Southern Imperial.

42. For example, Samuels and Lee authorized Southern Imperial to pay Rally Capital amounts far in excess of the Engagement Estimate for services provided during the Wind-Down Period that, on information and belief, they knew were unreasonable and unnecessary in order to further their own interests and the interests of their company, Rally Capital.

43. As a result of Samuels' and Lee's breaches of their fiduciary duty of loyalty, Plaintiffs have been damaged in an amount to be proven at trial.

## Count IV – Breach of Contract
### (Engagement Letter – All Defendants)

44. Plaintiffs incorporate by reference each of the foregoing allegations as if fully restated here.

45. The Engagement Letter is a valid and enforceable contract between Southern Imperial and Rally Capital.

46. Southern Imperial fully performed its obligations under the Engagement Letter.

47. Rally Capital breached the Engagement Letter by performing unnecessary services during the Wind-Down Period in order to increase the fees owed by Southern Imperial and by charging fees significantly in excess of the Engagement Estimate.

48. Rally Capital's conduct was willful because it charged unreasonable fees to Southern Imperial knowing that the board of directors, controlled by Rally Capital principals, would pay the fees invoiced regardless of whether the fees charged were reasonable or the services were warranted.

49. As a result of Rally Capital's breaches of the Engagement Letter, Southern Imperial has been damaged in an amount to be proved at trial.

50. On information and belief, Rally Capital acted at the direction of Samuels and Lee, who controlled the actions of Rally Capital with respect to its engagement with Southern Imperial,

and therefore Samuels and Lee are liable for Rally Capital's breaches of the Engagement Letter as Rally Capital's agent and/or alter ego.

### Count V – Breach of Contract
### (Post-Closing Agreement – All Defendants)

51. Plaintiffs incorporate by reference each of the foregoing allegations as if fully restated here.

52. The Post-Closing Agreement is a valid and enforceable contract between Studdard, as trustee of the ESOP, and Rally Capital.

53. Studdard fully performed its obligations under the Post-Closing Agreement.

54. Rally Capital breached the Post-Closing Agreement failing to pay Southern Imperial's debts, including taxes due to the state of Texas, and by overpaying itself and others.

55. Rally Capital's conduct was intentional, willful, wanton, and/or done with gross negligence because no reasonable person would fail to pay taxes due to the State of Texas.

56. Rally Capital's conduct was further intentional, willful, wanton, and/or done with gross negligence because it paid itself an unreasonable fee knowing that Southern Imperial's board of directors, controlled by Rally Capital principals, would pay the fees invoiced regardless of whether the fees charged were reasonable or the services were warranted.

57. As a result of Rally Capital's breaches of the Post-Closing Agreement, Studdard, as trustee of the ESOP, has been damaged in an amount to be proved at trial.

58. On information and belief, Rally Capital acted at the direction of Samuels and Lee, who controlled the actions of Rally Capital with respect to the Post-Closing Agreement, and therefore Samuels and Lee are liable for Rally Capital's breaches of the Post-Closing Agreement as Rally Capital's agent and/or alter ego.

## Count VI – Conversion
### (All Defendants)

59.     Plaintiffs incorporate by reference each of the foregoing allegations as if fully restated here.

60.     At all relevant times, the assets of Southern Imperial belonged to Plaintiffs.

61.     Despite the fact that the assets of Southern Imperial lawfully belonged to Plaintiffs, Defendant converted these assets for their own use and benefit, including by authorizing payments to themselves from Southern Imperial's assets in excess of Southern Imperial's agreement with Rally Capital and paying themselves for unnecessary and unreasonable services.

62.     Plaintiffs have an absolute and unconditional immediate right to Southern Imperial's assets, however these assets are now in possession of Defendants.

63.     Plaintiffs have demanded the return of their assets from Defendants to no avail.

64.     As a result of Defendants' conversion of Southern Imperial's assets, Plaintiffs are entitled to damages in an amount to be proven at trial.

65.     Plaintiffs are further entitled to punitive damages due to Defendants' willful, wanton, and outrageous conduct in converting Southern Imperial's assets.

WHEREFORE, Plaintiffs Lance Studdard, in his capacity as the trustee of the Southern Imperial, Inc. Employee Stock Ownership Plan and Southern Imperial, Inc. pray for the following relief:

A. judgment in Plaintiffs' favor on all Counts set forth above;

B. an equitable lien on and constructive trust over the ESOP plan assets obtained by Samuels and Lee as a result of the breaches of their fiduciary duties;

C.  an equitable lien on and constructive trust over the ESOP plan assets obtained by Rally Capital as a result of Samuels' and Lees' breaches of their ERISA fiduciary duties;

D.  damages for Samuels' and Lee's breach of their duty of loyalty owed to Southern Imperial in an amount to be proven at trial;

E.  damages for Rally Capital's breaches of contract in an amount to be proven at trial;

F.  damages for Defendants' conversion of Southern Imperial's assets;

G.  punitive damages as a result of Defendant's willful, wanton, and outrageous conversion of Southern Imperial's assets;

H.  attorneys' fees and costs pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1); and

I.  all other such other, further, and different relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby request a trial by jury with the maximum number of jurors permitted by law on all claims so triable.

Dated: August 2, 2021

Respectfully submitted,

*/s/ Steven A. Block*
Steven A. Block (6269433)
THOMPSON HINE LLP
20 N. Clark Street, Suite 3200
Chicago, Illinois 60602
(312) 998-4242
Steven.Block@ThompsonHine.com

Melanie M. Lazor (OH 0095809)
(*pro hac vice* to be filed)
THOMPSON HINE LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45020
(513) 352-6700
Melanie.Lazor@ThompsonHine.com

*Attorney for Plaintiffs Lance Studdard, in his capacity as the trustee of the Southern Imperial, Inc. Employee Stock Ownership Plan and Southern Imperial, Inc.*